Joel Turner, Jr.,                                  )    C/A No. 4:11-3177-RBH-TER
                                                   )
                          Plaintiff,               )
                                                   )
vs.                                                )
                                                   ) REPORT AND RECOMMENDATION
McKiether Bodison, Warden - Lieber Corr. Inst.; Fred B.   )
Thompson, Associate Warden - Lieber Corr. Inst.; Dr. Babb,   )
Doctor - Lieber Corr. Inst.; Starr Connelly, HCA - Lieber   )
Corr. Inst.; Nurse Felder-Gatson, Lieber Corr. Inst., in his/her   )
individual and official capacity,                  )
                                                   )
                          Defendants.              )
_____ )


# I. PROCEDURAL BACKGROUND

The Plaintiff, Joel Turner, proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1] on

November 23, 2011. At all times relevant to the allegations in the complaint, Plaintiff was housed

at the Lieber Correctional Institution ("LCI"). Plaintiff is currently housed at the Kershaw

Correctional Institution. Defendants filed a motion for summary judgment on June 11, 2012. (Doc.

#38). Because Plaintiff is proceeding *pro se*, he was advised on or about June 12, 2012, pursuant to

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants'

motion for summary judgment could result in dismissal of his complaint. The Plaintiff filed a

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because
this is a dispositive motion, the report and recommendation is entered for review by the District
Judge.

response in opposition on July 10, 2012. (Doc.#48). Defendants filed a reply to the response on June 19, 2012.

## II.  DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.  Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48

(1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.


## B. ARGUMENT OF PARTIES/ANALYSIS

The Plaintiff alleges the Defendants failed to timely and properly treat his shoulder injury with immediate shoulder surgery and physical therapy when the steel bed frame in his cell fell on him on June 5, 2009. Specifically, Plaintiff argues that he was denied surgery and physical therapy on several occasions causing his injury to become worse and caused him pain and suffering. Plaintiff alleges that Defendant Bodison is the Warden at LCI and was in charge of his safety and well being but was negligent in failing to remove the third row of steel bed frames. In his complaint, Plaintiff asserts as follows, quoted verbatim:

On June 5, 2009, at approx. 12:00 p.m., plaintiff was housed in Cooper Unit A-wing, located in the Lieber Correctional Institution, was physically injured when the third steel bed frame in plaintiff's cell fell down upon him.

At approx. 12:30 pm, Sgt. Albert O. Smith wrote up an incident report for plaintiff to go to medical.

At approx. 1:40 pm, plaintiff arrived at medical and was seen by nurse Dareel A. Bessinger.

Upon examination, Nurse Bessinger cleaned the wounded area with green soap, and applied antibiotic ointment, covered the wound with a gauze to keep clean over night, and gave plaintiff pain pills, and sent plaintiff back to his living unit.

Plaintiff then approached Ass. Warden Thompson and told him what had happened to him, and stated he needed to see a doctor, that he was in tremendous pain. The Ass. Warden then told plaintiff he was just seen by medical, and it was nothing he could do.

Plaintiff then wrote a request to staff to the Warden Bodison, informing him of the incident.

. . .

On June 7, 2009, wing officer (Cheryl Costa) called medical for plaintiff because of pain, and officer was told to send plaintiff to medical the following day, that there was no one inside medical to treat plaintiff.

On June 8, 2009, plaintiff went to medical, was examined by nurse, given a triple antibiotic ointment to put on wound, a bandage along with pain medicine, was referred to see a doctor and sent back to living unit prior to being given an "OTR"to come to medical until the 12th of June for dressing change.

On June 16, 2009, plaintiff went to medical to see nurse practitioner about right shoulder pain, and was told he had an outside appointment scheduled.

On June 17, 2009, plaintiff went to outside appointment for MR/ anthrogram of right shoulder.

On June 18, 2009, plaintiff went back to medical complaining of severe right side pain and trouble breathing.

On June 22, 2009, plaintiff went to ortho-clinic for follow-up at Kirkland Corr. Inst. and passes out due to severe side pain, and stayed in the Kirkland infirmary.

On June 23, 2009, plaintiff was discharged from the infirmary, sent back to Lieber, and that was when plaintiff received results of MR/anthrogram of right shoulder which showed partial-thickness tear in Supraspoinatus tendon.

On June 24, 2009, plaintiff was ordered by Dr. Babb, no strenuous activity, and give [T]ylenol #3 for pain was told he had a follow up with ortho-clinic in 6 wks for right shoulder pain.

On June 25, 2009, x-rays ordered for possible right ribs fracture.

On July 8, 2009, x-rays come back and showed 10th rib on right side was fractured.

On July 13, 2009, plaintiff informed that he would be returning to ortho-clinic for follow-up because of his fractured rib as well.

On July 17, 2009, plaintiff went to ortho-clinic was ordered to go thru PT off and on until March 24, 2010.

On April 6, 2010, plaintiff had outside appointment and was told it be recommended he have surgery on right shoulder.

On April 13, 2010, plaintiff was told the medical director, Dr. Moore, disapproved the surgery.

On April 26, 2010, plaintiff is seen by nurse practitioner Wilbur Jones, who re-submit another consult for surgery, which was denied again by medical director Dr. Moore, and that he would submit another consult a third time.

On Nov. 12, 2010, plaintiff finally had surgery on right shoulder and had a piece of his bicep tendon removed in the process, due to the surgery being prolonged for over a year.

On Dec. 20, 2010, plaintiff went back to ortho-clinic for follow-up and was told by physical therapist, Cindy Ellis, to start "Red Band" therapy 3 days/wk til March 2011.

. . .

On July 11, 2011, plaintiff had to go back ortho-clinic and give a steroid injection due to his denial of going through physical therapy by Warden Fred. B. Thompson. On August 11, 2011, plaintiff was released to the yard.

On August 22, 2011, plaintiff was given an "OTR" by medical staff after Physical Therapist, Cindy Ellis sent a fax message stating that it is a must plaintiff receive this

therapy 1-hr per day for 3 months due to plaintiff being denied physical therapy from
Jan. 2011 until March 2011.

. . .

(Complaint).

Defendants argue they are entitled to summary judgment because Plaintiff fails to state a
claim against Defendant Bodison, the claims are barred pursuant to Eleventh Amendment and
qualified immunity, and Plaintiff cannot show that his medical problems were serious or life
threatening or that the defendants were deliberately indifferent to his health or safety.

Defendants submitted the affidavit of Dr. Robert E. Babb along with attached medical
records of Plaintiff. In his affidavit, Dr. Babb attests that at the time of the matters alleged in the
complaint, the SCDC employed him as a medical doctor to provide care and treatment to inmates.
Dr. Babb set out all the dates that Plaintiff was seen in medical, ortho-clinic, physical therapy, and
by outside medical care. (Babb affidavit, doc. # 38-2). Plaintiff was seen in the LCI medical office
on June 5, 2009, after an officer called and said the top bunk fell down on Plaintiff. (Id.). Plaintiff
was examined by the nurse who noted a superficial scratch under the right arm, cleaned the scratch
with green soap, applied antibiotic ointment, and covered it with a bandage. (Id.). The nurse gave
Plaintiff a starter pack of Phenylgesic tablets and told him to return to medical if he had problems.
(Id.). Plaintiff returned to medical on June 8, 2009, and was examined by a nurse practitioner who
did not find any obvious broken ribs or right shoulder dislocation. (Id.).The nurse practitioner
ordered medication for the pain, an arm sling, wound care for the chest wall laceration, Meals on
Wheels and follow-up by the Orthopedic Clinic after a MR/arthrogram of the right shoulder. (Id.).
Plaintiff presented to the medical office each day for wound care and dressing change from June 9-

11, 2009, but continued to complain of right shoulder pain and a decreased range of motion. (Id.).
Dr. Babb saw Plaintiff on June 12, 2009, in the Doctor's Clinic and ordered Motrin for the shoulder
pain. (Id.). On June 18, 2009, Plaintiff walked into the medical office with complaints of severe
right-sided pain and trouble breathing. (Id.). A nurse practitioner examined Plaintiff, his vital signs
were normal, and he was returned to the dorm in a wheelchair. (Id.).

On June 22, 2009, Plaintiff was brought to the medical annex on a stretcher afer he was
found in the visitation area lying on the floor in a prone position moaning with pain. (Id.). Plaintiff
stated he passed out due to the pain in the right side of the chest and in the shoulder. (Id.). A doctor
examined Plaintiff and ordered pain medication. Plaintiff was transferred to the Infirmary. (Id.).
Plaintiff was released from the Infirmary on June 23, 2009, with a diagnosis of vasovagal syncope
secondary to right rib pain. (Id.). Plaintiff was in no acute distress and was given pain medicine and
instructed to follow up with the Orthopaedic Clinic in 6 weeks. (Id.). An MRI of the right shoulder
showed a partial-thickness tear in the supraspinatus tendon with mild impingement secondary to
hypertrophic change in the AC joint. The radiologist suspected a focal posterior capsular tear near
the capsule-glenoid junction. (Id.). An x-ray of the right rib cage showed a fracture of the 10th rib
which Plaintiff was informed by a nurse practitioner on July 13, 2009, and instructed to reduce any
lifting or strenuous activity until seen by the Orthopaedic Clinic. (Id.).

Plaintiff was seen in the Orthopaedic Clinic on August 17, 2009, for evaluation of his right
shoulder injury and was ordered by the doctor to have supervised physical therapy three times a
week for range of motion strengthening of the right shoulder rotator cuff, and discussed the
possibility of a steroid injection, if no improvement. (Id.). A nurse practitioner instructed Plaintiff

regarding theraband therapy for three months. (Id.). A nurse noted that Plaintiff tolerated the band therapy and denied any discomfort. (Id.).

On September 9, 2009, Plaintiff presented to the medical office for band therapy but was belligerent and hostile, breaking the red band and trying to take a piece with him. (Id.). Plaintiff reported for therapy throughout September 2009, October 2009, and on November 4, 2009, tolerating the therapy well and without complaints. (Id.).

On November 11, 2009, Plaintiff was brought to the medical office after he was found on the cell floor complaining of severe pain saying that his roommate beat him and hit and kicked him in the side, and then he fell and hit his head. (Id.). Plaintiff was transferred to the Trident Medical Center ER by the doctor on call and returned on November 12, 2009, to LCI with a diagnosis of neck sprain or strain being placed in a holding cell for protection and monitoring. (Id.). Dr. Babb ordered muscle relaxers on November 13, 2009, and told him to follow-up with the nurse practitioner if he did not get better. On December 8, 2009, Plaintiff complained again of pain in the posterior right shoulder that increased when he lifted his hands over his head or had his hands behind his back when handcuffed with a knot on his right shoulder. (Id.). Plaintiff was housed in maximum security for protection and was not receiving therapy for his shoulder. (Id.). The nurse noted Plaintiff was going to have an Orthopaedic appointment. (Id.).

On January 26, 2010, Plaintiff went to the Orthopedic Clinic and received an injection. Plaintiff reported to the medical office for band therapy in January, February and March tolerating it well without complaints. (Id.). On April 6, 2010, Plaintiff was seen in the Orthopedic Clinic at which time the doctor recommended shoulder arthroscopy, shoulder decompression and distal clavicle resection. (Id.). However, the SCDC Medical Director denied the surgery on April 13, 2010.

On April 26, 2010, the nurse practitioner resubmitted the request with the notes from the orthopedic surgeon. On May 10, 2010, Plaintiff presented to the medical office complaining about chest pain and breathing difficulty in the rib area, was examined by a nurse, and was diagnosed with musculoskeletal discomfort after being examined with normal vital signs and clear lungs. (Id.). On May 13, 2010, the Plaintiff was seen in sick call where he was examined, found to have swelling and redness in the shoulder and hand area, stated he had not been taking much of his medication and had not been doing his theraband therapy. (Id.). Plaintiff received an injection in the shoulder area, and the nurse resubmitted the request for surgery. On June 25, 2010, Plaintiff was seen in medical complaining of pain in his right shoulder for which he received a sling, ice, an injection, and pain medication. The nurse practitioner resubmitted the surgery request. (Id.).

On August 5, 2010, Plaintiff was seen in the Doctor's Clinic by another doctor who charted he was familiar with Plaintiff's medical history, he did not think Plaintiff would be satisfied with surgery on the right shoulder because he had been complaining for ten years despite multiple orthopedic appointments, and believed Plaintiff would be better off pursuing the chronic issues when he was released from prison. Plaintiff was seen again in sick call on August 30, 2010, and in the Orthopedic Clinic on September 21, 2010. (Id.). Dr. Babb sent a request to the SCDC Medical Director. (Id.). Plaintiff had arthroscopic shoulder surgery at Palmetto Health Richland on November 12, 2010.

Plaintiff continued to be seen both in the medical office and the Orthopedic Clinic. Plaintiff received pain medication, therapy, x-rays at the hospital, and band therapy. (Id. and encounters #748, 750, 751, 752, 754, 755-759, 761, 762, 768, 769, 775, 778, 785, 787-793 and 795-808). Dr. Babb attests that:

> Plaintiff received and continues to receive care and treatment for his shoulder problems, including surgery and physical therapy. Plaintiff has not experienced any serious or life threatening medical problems regarding his shoulder, and he has not had any emergent or urgent medical problems caused by the shoulder that required immediate or emergency care. Plaintiff's shoulder problems were timely evaluated and have been appropriately treated. Any alleged delay in treatment did not cause Plaintiff any additional injury or damage. Defendant Nurse Connelly, defendant nurse Felder-Gatson and I, provided , and other SCC health care providers continue to provide adequate and appropriate care and treatment to Plaintiff for his shoulder problems. Defendant Warden Bodison and Defendant Associate Warden Thompson were never involved in the care and treatment of Plaintiff for his shoulder problems and did not make any decisions regarding the care and treatment of Plaintiff 's shoulder problems.

(Dr. Babb's affidavit, p. 14).

In the case of  Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).  The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . .  We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03

(1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

The Plaintiff has failed to show that he was denied medical treatment after the bed frame in his cell fell on him. Plaintiff received treatment and continued to be seen in the medical clinic, Doctor's Clinic and Orthopedic Clinic. Plaintiff was seen and treated at the hospital, received pain medication, and received surgery. Plaintiff was given injections and received physical therapy and theraband therapy. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Additionally, Plaintiff has failed to show that he had a serious medical need of which Defendants knew about and consciously ignored. Plaintiff has not shown that any conduct by these Defendants "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair,

supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel generally fails to state a claim. Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v.Sheffer, supra.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the Plaintiff, and Plaintiff has not shown substantial harm by any alleged delay in surgery or therapy.[2] For the above stated reasons, summary judgment should be granted in favor of Defendants on this issue.

Moreover, any allegations of medical indifference as to Defendant Warden Bodison should be dismissed as he is not medical personnel and Plaintiff has not shown that he interfered with Plaintiff's medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. Under these principles, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against non-medical personnel.

---

[2] Event though Plaintiff has alleged that he was caused more injury and pain and suffering because he did not receive immediate surgery on his shoulder, Plaintiff has not provided any evidence of this other than his own conclusions.

## C. DELIBERATE INDIFFERENCE TO RISK OF HARM

With regard to Plaintiff's allegation that Defendants Bodison and/or Thompson were deliberately indifferent to a risk of harm, the claim should be denied. The Supreme Court recognized that punishment prohibited by the Constitution does not result from negligence on the part of prison officials. The Supreme Court stated this principle and established the appropriate standard in Whitley v. Albers, 475 U.S. 312 (1986).

> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety.
> . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the
>
> Cruel and Unusual Punishments Clause. . . . Id., at 1084.

Based on these precedents the issue is whether an inmate who has suffered injury has alleged and offered evidence that the prison officials "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm. . . ." Ruefly v. Landon, 825 F.2d 792 (4th Cir. 1987). The Supreme Court has recently defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825 (1994).

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of

confinement <u>unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. (Emphasis added). This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Id.</u> at 837-38.

The obduracy and wantonness standard applies to prison officials in supervisory positions as well as to guards and corrections officers who deal with inmates directly. Thus, a supervisor must know of a specific risk or be aware of a pervasive risk of harm and act "wantonly, obdurately, or with deliberate indifference to that specific or pervasive risk of harm." <u>Moore v. Winebrenner</u>, 927 F.2d 1312 (4th Cir.), <u>cert. denied</u>, 502 U.S. 828 (1991).

Plaintiff fails to make a showing that these prison officials wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm, that the officials were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that they also drew the inference. <u>Farmer</u>, <u>supra</u>; <u>Rich v. Bruce</u>, 129 F.3d 336 (4th Cir. 1997)("A defendant is not subjectively reckless where, although he is aware of the existence of a general risk, he is unaware that his conduct is inappropriate in light of that risk. True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). In the attachments to Plaintiff's response in opposition to the

motion for summary judgment, Plaintiff attaches a copy of his Request to Staff Member addressed to Defendant Warden Bodison in which Plaintiff states that he recently moved into this cell on 6-3-09, and was "never notified that the third bunk was never probably bolted down by maintenance, as I was retrieving my legal box off this bunk (third), the whole bunk came down on me. . . I'm bring this to your attention, due to the negligence of your maintenance staff here at Lieber Corr. Insti." (Doc. # 48-2, p. 1). Defendant Bodison responded "I/M tuner, as you stated I was not aware of this incident. I'll speak with Lt. Miller regarding maint. involvement if any." Id. Therefore, Plaintiff himself asserted that Defendant Bodison did not know about the problem until after his injury. Further, with his response, Plaintiff submitted statements from three other inmates who stated that since the injury, the third level steel framed bed has been removed at the request of the Unit Lt. Miller and placed in the closet on A-wing of Cooper Unit. Plaintiff also submitted the declaration of inmate Bennie Thompson who states that he was housed at LCI Cooper Unit A-Wing and requested an officer to do a Work Order to have maintenance personnel report the third steel bed frame because it was not bolted down. Thompson asserts that he was moved out of the cell on June 3, 2009, and was informed that Plaintiff was injured due to the bed frame falling on him after moving into his old room. (Doc. #48-1). Again, no evidence that Defendant Bodison or Thompson was aware there was a problem with the bed frame.

However, assuming Defendants' actions were indicative of negligence, a showing of mere negligence will not meet the deliberate indifference standard. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Neither the Fourteenth Amendment Due Process Clause, Davidson v. Cannon, 474 U.S. 344, 347 (1986), nor Eighth Amendment, Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir.

1991) is violated by negligent failure to protect inmates from violence. Thus, it is recommended that this claim be dismissed and summary judgment granted in favor of the Defendants.

## D.  INJUNCTIVE RELIEF

Since Plaintiff is no longer incarcerated at the Lieber Correctional Institution, to the extent he has requested declaratory and/or injunctive relief, his claims are moot. Plaintiff is currently housed at Kershaw Correctional Institution. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).

## E.  QUALIFIED IMMUNITY

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity. Although the burden of showing immunity remains on the Defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a Defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the Defendant and the burden of proving entitlement to immunity rests with the Defendant asserting it.  Once asserted,

However, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the Defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995).  As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, Defendants are entitled to qualified immunity.  Thus, the undersigned recommends that summary judgment be granted as to these Defendants.

## F.  ELEVENTH AMENDMENT IMMUNITY

The Defendants contend that the Plaintiff's §1983 claims them for money damages in their official capacity are barred pursuant to Eleventh Amendment Immunity.  Defendants also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as an employee of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of

19

> civil liberties. The Eleventh Amendment bars such
> suits unless the State has waived its immunity (cites
> omitted) or unless Congress has exercised its
> undoubted power under § 5 of the Fourteenth
> Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendants were/are employees of the SCDC at the time of the allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

## G. PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## III. CONCLUSION

The Plaintiff has failed to show that the Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by the Defendants (document #38) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 31, 2012
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**